**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CAMPAIGN LEGAL CENTER<br>1101 14th Street NW, Suite 400<br>Washington, DC 20005,<br>       Plaintiff,<br><br>    v.<br><br>FEDERAL ELECTION COMMISSION<br>1050 First Street NE<br>Washington, DC 20463,<br>       Defendant. | Civil Action No. _____ |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1. Plaintiff Campaign Legal Center ("CLC") brings this action against the Federal Election Commission ("FEC" or "Commission") for declaratory and injunctive relief pursuant to 52 U.S.C. § 30109(a)(8), challenging as contrary to law the FEC's dismissal of an administrative complaint, and a supplement to that complaint, that CLC filed against former President and 2020 presidential candidate Donald J. Trump's authorized campaign committee, Donald J. Trump for President, Inc. ("Campaign" or "Trump Campaign"),[1] and one of his authorized joint fundraising committees, Trump Make America Great Again Committee ("TMAGA"; collectively, "Committees" or "Trump Committees") for violations of the Federal Election Campaign Act ("FECA" or "Act").

2. The administrative complaint—filed with the FEC on July 28, 2020, and supplemented on January 28, 2021, and collectively designated Matter Under Review ("MUR")

---

[1] In February 2021, after CLC filed its complaint and supplement, the Trump Campaign changed its name to Make America Great Again PAC and converted to a multicandidate committee. *See* Statement of Reasons of Chairman Allen J. Dickerson and Comm'rs Sean J. Cooksey and James E. "Trey" Trainor, III at 1 n.1, MUR 7784 (Make America Great Again PAC, *et al.*) (June 9, 2022), https://www.fec.gov/files/legal/murs/7784/7784_42.pdf.

7784 (Make America Great Again PAC, *et al.*)[2]—alleged that the Trump Committees had violated 52 U.S.C. § 30104(b) by failing to properly disclose hundreds of millions of dollars in payments to subvendors and staff made through two firms affiliated with the Trump Campaign. Ex. 1, Admin. Compl. ¶¶ 1-2, 81, 91; Ex. 2, Suppl. to Admin. Compl. 6. In particular, the complaint and its supplement alleged that the Trump Committees had laundered upwards of three quarters of a billion dollars in 2020 campaign spending through American Made Media Consultants, LLC ("AMMC")—a corporation apparently created and controlled by Campaign officials—and Parscale Strategy, LLC—the consulting firm of former Campaign manager Bradley J. Parscale—thereby disguising the details of the transactions and the identities of the ultimate payees. Ex. 1, Admin. Compl. ¶ 2; Ex. 2, Suppl. to Admin. Compl. 1-2.

3.      Drawing on publicly available information, including press reports, statements by Campaign officials and contractors, FEC disclosure reports, and filings with other federal and state government agencies, the administrative complaint and its supplement documented how AMMC was created and run by Trump Campaign officials and used by the Committees to distribute hundreds of millions of dollars in campaign spending without disclosing the ultimate payees or accurately reporting the details or purposes of the payments. The administrative filings also described how the Trump Campaign used Parscale Strategy as a conduit to pay staff salaries, including to senior Campaign officials and Trump family members, again without accurately disclosing the details or purposes of the transactions.

4.      The administrative complaint asked the Commission (1) to find reason to believe that the Committees had violated § 30104(b) by failing to properly itemize and report their

---

[2]      The July 28, 2020 administrative complaint and the January 28, 2021 supplement are attached hereto as Exhibits 1 and 2, respectively. Other documents in the MUR file are available on the FEC's website, at https://www.fec.gov/data/legal/matter-under-review/7784.

disbursements, (2) to conduct an investigation to determine whether a violation had occurred or was about to occur, and (3) to seek appropriate sanctions. Ex. 1, Admin. Compl. ¶¶ 92-93.

5.     After reviewing the allegations in CLC's administrative filings, the FEC's nonpartisan Office of General Counsel ("OGC") recommended that the Commission find reason to believe that (1) the Committees violated FECA through their failure to disclose the ultimate payees of disbursements made through AMMC and (2) the Trump Campaign violated the Act by failing to disclose the ultimate payees and actual purposes of disbursements made through Parscale Strategy. *See* First General Counsel's Report at 1-2, MUR 7784 (Apr. 6, 2022), https://www.fec. gov/files/legal/murs/7784/7784_31.pdf ("OGC Report").

6.     Despite OGC's recommendation, the Commission failed, by a vote of 3-3, to obtain the four affirmative votes needed to find reason to believe and proceed with an investigation into the alleged violations. *See* Certification at 1-3, MUR 7784 (dated May 11, 2022), https://www.fec. gov/files/legal/murs/7784/7784_32.pdf. The Commission subsequently voted 4-2 to close the file, dismissing the complaint. *See id.* at 3.

7.     The Commission's failure to find reason to believe and consequent dismissal of Plaintiff's administrative complaint rested on impermissible interpretations of FECA and FEC regulations and was arbitrary, capricious, and otherwise contrary to law. *See Orloski v. FEC*, 795 F.2d 156, 161 (D.C. Cir. 1986).

8.     This failure to enforce FECA's disclosure requirements undermines voters' right to know "where political campaign money comes from and how it is spent," *Buckley v. Valeo*, 424 U.S. 1, 66 (1976) (per curiam) (quoting H.R. Rep. No. 92-564, at 4 (1971)), and "to make informed decisions" in elections, *Citizens United v. FEC*, 558 U.S. 310, 371 (2010). Moreover, the Commission's dismissal of Plaintiff's well-supported allegations encourages future campaigns—

including any 2024 Trump presidential campaign[3]—to seek to evade the Act's transparency requirements by similarly laundering payments through a small number of reported vendors.

9.    The Commission's dismissal of Plaintiff's administrative complaint injures CLC by depriving it of statutorily mandated disclosure information upon which CLC relies to complete its work and advance its mission. Without full and accurate reporting by the administrative respondents, Plaintiff cannot know what vendors and individuals ultimately supplied the services for which the Trump Committees paid through AMMC or Parscale Strategy, nor the amounts, dates, and purposes of payments ultimately made to those vendors. FECA legally entitles CLC to this information.

10.    Plaintiff therefore requests that this Court declare that the FEC's dismissal of the administrative complaint and its supplement was arbitrary, capricious, and contrary to law, and order the Commission to conform with such declaration within thirty days.

## JURISDICTION AND VENUE

11.    This Court has both subject matter jurisdiction over this action and personal jurisdiction over the parties pursuant to 52 U.S.C § 30109(a)(8)(A) and 28 U.S.C. § 1331.

---

[3]    Former President Trump has repeatedly signaled that he plans to once again be a candidate for President in the 2024 election. *See, e.g.*, Jill Colvin, *Donald Trump Teases 2024 Presidential Run at Conservative Conference*, PBS (June 17, 2022), https://www.pbs.org/newshour/politics/trump-teases-2024-presidential-run-at-conservative-conference; Mary Papenfuss, *Trump Says Only Hurdle to 2024 Run Would Be a 'Bad Call from a Doctor*,*'* Yahoo! News (Sept. 25, 2021), https://news.yahoo.com/trump-says-only-hurdle-2024-231133553.html; Cheryl Teh, *Trump Drops the Biggest Hint Yet that He'll Be Running in 2024, Calling Himself the '45th and 47th President' in a Video*, Insider (Jan. 26, 2022), https://www.businessinsider.com/trump-drops-hint-about-2024-run-calling-himself-47th-president-2022-1. Indeed, Trump may already have triggered candidate status under FECA based on his public statements and conduct. *See, e.g.*, American Bridge PAC, FEC Complaint Against Donald J. Trump (Mar. 14, 2022), https://americanbridgepac.org/wp-content/uploads/2022/03/Trump-FEC-complaint-edits-v2.pdf; Meg Kinnard, *Trump Accused of Breaking Campaign Laws by Teasing 2024 Run*, ABC News (Mar. 14, 2022), https://abcn.ws/3t8X74G.

12.     Venue lies in this district under 52 U.S.C. § 30109(a)(8)(A).

## THE PARTIES

13.     Plaintiff CLC is a nonpartisan, nonprofit organization that works to strengthen American democracy through, among other activities, local, state, and federal efforts to ensure that the public has access to information regarding the financing and spending of U.S. election campaigns.

14.     As part of this effort, CLC conducts research, authors reports and articles, and regularly provides expert analysis to the media. CLC also litigates throughout the country regarding campaign finance matters; files FEC complaints requesting that enforcement actions be taken against individuals or organizations that violate the law; participates in rulemaking and advisory opinion proceedings before the FEC to ensure that the agency is properly interpreting and enforcing federal campaign finance laws; and engages in legislative advocacy for reform measures at the federal, state, and local levels.

15.     CLC relies on the accurate and complete reporting of campaign finance information to carry out activities central to its mission, including the production of reports and other materials to educate the public about campaign spending. These activities are obstructed when information that is subject to mandatory disclosure under FECA is not publicly available.

16.     CLC expends significant resources assisting reporters and other members of the media in their investigative research into candidates' financial activities, to ensure that the public is equipped with the information necessary to evaluate different candidates and messages and to cast informed votes.

17.     CLC also uses its analyses of federal campaign finance disclosure information to support its administrative practice at the FEC and before state and local campaign finance agencies, and to defend campaign finance laws in its active docket of cases in federal and state courts.

18.     When inadequate disclosure of federal campaign finance activity makes it difficult to ascertain the nature of a committee's spending, reporters often contact CLC for guidance as to whether or where they can find the campaign finance information that is not being properly reported. This work requires CLC to divert resources and funds from other organizational needs.

19.     Defendant FEC is an independent federal agency charged with the administration and civil enforcement of FECA. 52 U.S.C. § 30106(b).

## STATUTORY AND REGULATORY BACKGROUND

### FECA's Disclosure and Reporting Requirements

20.     FECA requires that "[e]ach treasurer of a political committee . . . file reports of receipts and disbursements" with the Commission. 52 U.S.C. § 30104(a)(1). These reports must disclose "the name and address" of each person to whom the committee has made operating expenditures or other disbursements of over $200, "together with the date[s], amount[s], and purpose[s]" of those expenditures or disbursements. *Id.* § 30104(b)(5), (6).

21.     FEC regulations similarly require that political committees disclose the dates, amounts, and purposes of expenditures and disbursements in excess of $200. 11 C.F.R. § 104.3(b)(3)(i), (b)(4)(i). Those regulations define "purpose" to mean "a brief statement or description of why the disbursement was made." *Id.* § 104.3(b)(3)(i)(A), (b)(4)(i)(A).

22.     A Commission policy statement further provides that the "purpose" description, together with the recipient's name, should enable "a person not associated with the committee [to]

6

easily discern why the disbursement was made." Statement of Policy: "Purpose of Disbursement" Entries for Filings with the Commission, 72 Fed. Reg. 887, 888 (Jan. 9, 2007).

23.     Commission precedent makes clear that a federal political committee must itemize payments to a subvendor if (1) the immediate vendor receiving the disbursement does not have an arm's-length relationship with the committee, (2) the payments to the subvendor are unrelated to the services provided pursuant to the immediate vendor's contract with the committee, or (3) the immediate vendor is merely acting as a "conduit" for disbursements to subvendors. *See, e.g.*, General Counsel's Brief 33-37, MUR 3847 (Stockman) (Sept. 15, 1997); Conciliation Agreement 2-4, MUR 4872 (Jenkins) (Feb. 15, 2002); Factual and Legal Analysis at 8-10, MUR 6724 (Bachmann for President) (July 13, 2017). Under these circumstances, failing to itemize disbursements to the ultimate payee violates 52 U.S.C. § 30104(b).

24.     In addition, Commission precedent specifically indicates that political committees must itemize and individually report salary payments to committee staffers, even when those staffers are paid through an outside firm. *See* Factual and Legal Analysis at 4-6, MUR 6818 (Allen Weh for Senate) (June 15, 2017); *see also* Factual and Legal Analysis at 8-10, MUR 6724 (Bachmann for President) (July 13, 2017).

25.     The Supreme Court has recognized the importance of FECA's disclosure and reporting requirements, which "provide[] the electorate with information 'as to where political campaign money comes from and how it is spent,'" *Buckley*, 424 U.S. at 66 (quoting H.R. Rep. No. 92-564, at 4 (1971)), and thereby "enable[] the electorate to make informed decisions," *Citizens United*, 558 U.S. at 371.

*Governing Administrative and Judicial Process*

26.     Any person may file a complaint with the FEC alleging a violation of FECA. 52 U.S.C. § 30109(a)(1). Commission regulations specify, in relevant part, that a complaint must identify the complainants and be sworn and signed, and that any allegations in a complaint "not based upon personal knowledge" should identify the source of the information that "gives rise to the complainant's belief in the truth of such." 11 C.F.R. § 111.4(b), (d).

27.     The Commission, after reviewing the complaint, any responses, and OGC's recommendation, then votes on whether there is "reason to believe" a violation has occurred. 52 U.S.C. § 30109(a)(2). The Commission will find "reason to believe" where a complaint "credibly alleges" that a FECA violation "may have occurred." FEC, Statement of Policy Regarding Commission Action in Matters at the Initial Stage in the Enforcement Process, 72 Fed. Reg. 12,545, 12,545 (Mar. 16, 2007).

28.     Any "party aggrieved" by the Commission's dismissal or failure to act upon an administrative complaint may seek judicial review in the U.S. District Court for the District of Columbia. 52 U.S.C. § 30109(a)(8)(A).

## FACTUAL BACKGROUND

*CLC's Administrative Complaint Against the Trump Committees*

29.     CLC and Margaret Christ, an individual, filed an administrative complaint with the FEC against the Trump Campaign and TMAGA on July 28, 2020. The complaint alleged that the Committees had violated 52 U.S.C. § 30104(b) by routing payments to vendors and staff through AMMC and Parscale Strategy without itemizing those disbursements or properly reporting them to the FEC. Ex. 1, Admin. Compl. ¶¶ 70-91. The FEC designated the matter initiated by the administrative complaint as MUR 7784.

30.     On January 28, 2021, CLC and Christ filed a supplement to the July 28, 2020 complaint with the Commission. The supplement explained that the Committees had continued to route payments through AMMC and Parscale Strategy after CLC filed its administrative complaint. Ex. 2, Suppl. to Admin. Compl. 1-2. The supplement also described reporting from December 2020 showing that senior Trump Campaign officials had approved AMMC's creation and appeared on its board, providing further evidence that AMMC was an extension of the Trump Campaign used to conceal the Campaign's spending. *Id.* at 2-3.

31.     Drawing on publicly available information—including media reports, public statements by Trump Campaign officials and contractors, FEC disclosure reports, and filings with other state and federal agencies—the complaint and its supplement alleged that the Committees violated FECA by failing to itemize and accurately describe the purposes of payments to subvendors paid through AMMC and Parscale Strategy even though those firms both (1) did not have arm's-length relationships with the Committees and (2) were used by the Committees as conduits for disbursements to subvendors that were effectively working directly for the Committees.

### *AMMC*

32.     The administrative complaint and its supplement alleged both that the Trump Committees did not have an arm's-length relationship with AMMC and that AMMC acted merely as a conduit for disbursements to subvendors.[4]

33.     *First*, the complaint and supplement alleged that the Committees and AMMC did not have an arm's-length relationship according to the key factors set forth in Commission precedent, which include whether a vendor's principals held positions with a campaign, whether

---

[4]   *See* Ex. 1, Admin. Compl. ¶¶ 73-81.

those principals held themselves out to the public as campaign officials, whether the vendor operated out of campaign headquarters, and whether the vendor was devoted largely to the campaign.[5]

34.      CLC's administrative filings described the substantial evidence that officials from the Trump Campaign approved of and oversaw AMMC's creation and participated in its corporate governance, including:

    a.  Published reports indicating that Jared Kushner, a senior Campaign official, "approved the creation of" AMMC.[6]

    b.  Corporate filings with state authorities and the Federal Communications Commission showing that Campaign officials served as officers of AMMC and its parent corporation and that AMMC's parent company shared an address with the Campaign's compliance firm.[7]

    c.  Numerous media reports describing AMMC as "created,"[8] "established,"[9] or "set up" by the Campaign or its officials.[10]

---

[5]  *See* Ex. 1, Admin. Compl. ¶¶ 13-25, 73-74; Ex. 2, Suppl. to Admin. Compl. 2-3.

[6]  Ex. 2, Suppl. to Admin. Compl. 2 (quoting Tom LoBianco & Dave Levinthal, *Jared Kushner Helped Create a Trump Campaign Shell Company that Secretly Paid the President's Family Members and Spent $617 Million in Reelection Cash, a Source Tells Insider*, Bus. Insider (Dec. 18, 2020), https://www.businessinsider.com/jared-kushner-trump-campaign-shell-company-family-ammc-lara-2020-12).

[7]  Ex. 1, Admin. Compl. ¶ 13 (citing state and FCC filings).

[8]  *E.g.*, Ex. 1, Admin. Compl. ¶ 19 (quoting Kenneth P. Vogel, *Trump Campaign Doubles Spending Rate as the 2020 Race Draws Near*, N.Y. Times (Oct. 15, 2018), https://www.nytimes.com/2018/10/15/us/politics/trump-campaign-spending-midterms-2020.html).

[9]  Ex. 1, Admin. Compl. ¶ 21 (quoting Ashley Balcerzak, *Trump Campaign Spends Big at Trump Properties—and Feathers Friends' Nests*, Ctr. for Pub. Integrity (Apr. 15, 2019), https://publicintegrity.org/politics/trump-campaign-spends-big-at-trump-properties-and-feathers-friends-nests).

[10]  Ex. 1, Admin. Compl. ¶ 23 (quoting Michelle Ye Hee Lee & Anu Narayanswamy, *Trump's 2016 Campaign Was Run on a Shoestring. His Reelection Machine Is Huge—and Armed with*

35.     In addition, the complaint and supplement demonstrated that AMMC was devoted largely to the Trump Committees' success: for example, all but one FEC-reported payment to AMMC came from the Committees, and the lone exception—a single payment for "list acquisition" in September 2019—came from the Republican National Committee ("RNC"), a joint fundraising participant in TMAGA.[11]

36.     *Second*, based on publicly available information that known "subvendors" being paid through AMMC were effectively working under the Campaign's direction and control, the administrative complaint alleged that the Committees used AMMC as a mere conduit to pay subvendors without disclosing them as payees.[12]

37.     For example, drawing on media reports, press releases, and filings made to agencies other than the FEC, the administrative complaint described the Trump Campaign's use of AMMC as a conduit to pay software company Phunware, Inc. ("Phunware") to develop the Campaign's official app.[13]

38.     Comments from both Phunware and Trump Campaign officials indicated that the company effectively worked directly for the Campaign, with AMMC serving merely as a conduit for payments. Parscale, for example, stated that the Campaign wanted "to build [its] own app,"

---

*Consultants*, Wash. Post (Oct. 8, 2019), https://www.washingtonpost.com/nation/2019/10/08/trumps-campaign-was-run-shoestring-his-reelection-machine-is-huge-armed-with-consultants); *see also id.* ¶ 73 (summarizing media reports regarding the Campaign's control of AMMC).

[11]   Ex. 2, Suppl. to Admin. Compl. 1-2. At the times relevant to the administrative complaint, TMAGA consisted of the Trump Campaign and the RNC; after the 2020 election, Save America, a leadership PAC, was added to TMAGA. *See* Ex. 1, Admin. Compl. ¶ 5; OGC Report at 3 & n.2.

[12]   *See* Ex. 1, Admin. Compl. ¶¶ 26-48, 75-80.

[13]   *See* Ex. 1, Admin. Compl. ¶¶ 26-34, 76.

one that the Campaign "actually" and "directly owned,"[14] and that the Campaign was involved in the decision to create the app, in defining the project's scope, and in adjusting the project's goals in light of the COVID-19 pandemic.[15] Phunware's president and CEO similarly explained that the company built the software for "the Trump-Pence team,"[16] and a company press release touted "American Made Media Consultants (*otherwise known as 'Trump-Pence 2020' and 'Keep America Great' Campaign*)" as new Phunware clients.[17]

39.     Multiple media outlets reported that Phunware was "hired" by[18] or "working for" the Trump Campaign.[19]

40.     Yet, although Phunware's SEC filings revealed that the company received millions of dollars in payments from AMMC in 2019 and 2020,[20] neither the Trump Campaign nor any

---

[14]   Ex. 1, Admin. Compl. ¶ 30 (emphasis omitted) (quoting Dana Bash & Bridget Nolan, *Trump's New Campaign App Gamifies Voter Outreach*, CNN (Apr. 23, 2020), https://www.cnn.com/2020/04/23/politics/trump-campaign-app/index.html).

[15]   Ex. 1, Admin. Compl. ¶ 31 (citing Peter Doocy, *Trump Team Launches New App Allowing Supporters to 'Engage with the Campaign from Their Couch,'* Fox News (Apr. 23, 2020), https://www.foxnews.com/politics/trump-team-launches-new-app-allowing-supporters-to-engage-with-the-campaign-from-their-couch).

[16]   Ex. 1, Admin. Compl. ¶ 29 (quoting Josh Rivera, *Donald Trump's 2020 Campaign App Gets a Boost with Phunware Partnership, One Day After Twitter Fact-Check*, USA Today (May 28, 2020), https://www.usatoday.com/story/tech/2020/05/27/donald-trump-reelection-app-phunware/5271268002).

[17]   Ex. 1, Admin. Compl. ¶ 28 (emphasis added) (quoting Press Release, Phunware, Phunware Announces Third Quarter 2019 Customer Wins (Oct. 4, 2019), https://www.phunware.com/press-releases/third-quarter-2019-wins).

[18]   Ex. 1, Admin. Compl. ¶ 28 (quoting Jarrett Renshaw & James Oliphant, *With Rallies Halted and Tweets Fact-Checked, Trump Campaign Turns to Smartphone App*, Reuters (June 2, 2020), https://www.reuters.com/article/us-usa-election-trump/with-rallies-halted-and-tweets-fact-checked-trump-campaign-turns-to-smartphone-app-idUSKBN2391FT).

[19]   Ex. 1, Admin. Compl. ¶ 33 (quoting Stephen Gandel & Graham Kates, *Phunware, a Data Firm for Trump Campaign, Got Millions in Coronavirus Small Business Help*, CBS News (Apr. 23, 2020), https://www.cbsnews.com/news/phunware-data-collection-trump-campaign-coronavirus-small-business-loans).

[20]   Ex. 1, Admin. Compl. ¶ 27 (citing Gandel & Kates, *supra* note 19, and SEC records).

other political committee reported any disbursements to Phunware during the 2019-2020 election cycle.[21]

41.     The administrative complaint described similar evidence that the Trump Committees used AMMC as a conduit to pay ad-placement firms Realtime Media[22] and Harris Sikes Media LLC,[23] and peer-to-peer messaging company Opn Sesame,[24] none of which appeared in the Committees' FEC-reported expenditures for the 2019-2020 election cycle at the time of the complaint's filing.[25]

42.     CLC, by conducting independent research, identified Phunware, Realtime Media, Harris Sikes Media LLC, and Opn Sesame as apparent undisclosed Campaign vendors and AMMC subvendors. But CLC remains unable to discern all the information that FECA required the Committees to disclose in connection with payments to those subvendors, including the amount, date, and purpose of each disbursement.

43.     Moreover, the four subvendors discussed in CLC's administrative complaint do not account for the full amount of the payments to AMMC reported by the Committees or for the full range of purposes given for those payments. For example, the Committees regularly labeled disbursements to AMMC as paying for media or video production, yet none of the four subvendors

---

[21]    Ex. 1, Admin. Compl. ¶ 34 (citing *Disbursements to Phunware*, FEC.gov, https://www.fec.gov/data/disbursements/?data_type=processed&recipient_name=phunware&two_year_transaction_period=2020&max_date=12%2F31%2F2020). No committee reported any payments to Phunware after the administrative complaint was filed. *See Disbursements to Phunware*, *supra*.

[22]    *See* Ex. 1, Admin. Compl. ¶¶ 35-38, 77.

[23]    *See* Ex. 1, Admin. Compl. ¶¶ 46-48, 79.

[24]    *See* Ex. 1, Admin. Compl. ¶¶ 39-45, 78.

[25]    Ex. 1, Admin. Compl. ¶¶ 38, 45, 47. After the complaint's filing, the Trump Campaign reported a disbursement to Harris Sikes Media LLC on December 22, 2020, for "Recount: Placed Media." *See Disbursements to Harris Sikes*, FEC.gov, https://www.fec.gov/data/disbursements/?data_type=processed&recipient_name=harris+sikes (last visited July 7, 2022). This date and description would not cover spending made to the firm through AMMC before Election Day.

identified in the complaint appear to provide those services.[26] Thus, the Committees' funneling of payments through AMMC has hidden the identities of other subvendors paid through AMMC and the details of the Committees' disbursements to those subvendors.

44.     The Trump Committees' failure to properly report the disbursements made through AMMC to undisclosed subvendors therefore violates 52 U.S.C. § 30104(b) and deprives CLC of disclosure information to which it is statutorily entitled.

*Parscale Strategy*

45.     Again drawing on publicly available information, including media reports, statements by Trump Campaign officials, and corporate filings, the administrative complaint also alleged both that the Committees did not have an arm's-length relationship with Parscale Strategy and that Parscale Strategy acted merely as a conduit for disbursements to subvendors.

46.     *First*, the complaint alleged that the Committees did not have an arm's-length relationship with Parscale Strategy.[27]

47.     The complaint explained that, according to corporate records, Parscale Strategy's only principal was Brad Parscale, a senior Trump Campaign official and, from February 2018 to July 2020, the Campaign manager.[28] In addition, the only firms to report payments to Parscale Strategy in 2020 were the Committees and the RNC, itself a participant in the TMAGA joint fundraising committee.[29]

---

[26]  Ex. 1, Admin. Compl. ¶¶ 11, 80 n.122; *see also Disbursements to American Made Media Consultants*, FEC.gov, https://www.fec.gov/data/disbursements/?committe&data_type=processed&recipient_name=american+made+media+consultants (last visited July 7, 2022).

[27]  *See* Ex. 1, Admin. Compl. ¶¶ 6, 12, 50-51, 84-85.

[28]  Ex. 1, Admin. Compl. ¶¶ 49, 84 (citing *Taxable Entity Search Results for "Parscale Strategy,"* Tex. Comptroller of Pub. Accts., https://mycpa.cpa.state.tx.us/coa/coaSearchBtn (last visited July 7, 2022) (search under "Entity Name" for "Parscale Strategy")).

[29]  Ex. 1, Admin. Compl. ¶¶ 50-51, 85 (citing FEC records).

48.     *Second*, the complaint alleged that the Trump Campaign used Parscale Strategy as a conduit to pay salaries for individuals working under the direction and control of the Campaign.[30]

49.     The complaint compiled numerous media reports indicating, based on statements by Parscale and other Trump Campaign officials, that the Campaign used Parscale Strategy as a conduit to pay Campaign staff salaries.[31] For instance, the *Washington Post* reported that "Parscale Strategy[] bills for the campaign salaries of Lara Trump and Kimberly Guilfoyle, the wife and girlfriend respectively of Trump's two oldest sons, Eric and Donald Jr."[32] Parscale himself was reportedly also paid through the firm.[33]

50.     The Trump Committees did not report any salary payments to Guilfoyle, Parscale, or Lara Trump during the 2020 election cycle.[34]

51.     The Trump Campaign's FEC filings listed the purposes of disbursements to Parscale Strategy as "strategy consulting" or other consulting and media services.[35] None of the purposes given referenced payroll or staff salary.[36]

---

[30]  *See* Ex. 1, Admin. Compl. ¶¶ 49-60, 86-90.

[31]  *See* Ex. 1, Admin. Compl. ¶¶ 52-59 (citing, for example, Vogel, *supra* note 8; Vicky Ward & Jim Acosta, *Trump Campaign Manager Brad Parscale Remains on Defense After Scrutiny over Financial Ties*, CNN (Sept. 9, 2019), https://www.cnn.com/2019/09/09/politics/brad-parscale-trump-campaign-financial-ties/index.html).

[32]  *E.g.*, Ex. 1, Admin. Compl. ¶ 59 (quoting Josh Dawsey & Michael Scherer, *Trump Replaces Campaign Manager as Polls Show Him Trailing Biden in Presidential Race*, Wash. Post (July 15, 2020), https://www.washingtonpost.com/politics/trump-parscale-stepien-campaign-manager/2020/07/15/91aad9b6-c6fd-11ea-8ffe-372be8d82298_story.html).

[33]  *E.g.*, Ex. 1, Admin. Compl. ¶ 53 (citing Julie Bykowicz, *Trump Campaign Machine Has Two-Year Head Start*, Wall St. J. (Apr. 14, 2019), https://www.wsj.com/articles/trumps-campaign-machine-has-two-year-head-start-11555243200).

[34]  Ex. 1, Admin. Compl. ¶ 60 (citing FEC records).

[35]  Ex. 1, Admin. Compl. ¶ 50 (citing FEC records); OGC Report at 22-23.

[36]  *See* Ex. 1, Admin. Compl. ¶ 50 (citing FEC records); OGC Report at 22-23.

52.     CLC, by conducting independent research, uncovered the information included in its administrative filings about the relationship between the Trump Committees and Parscale Strategy. But the available information is incomplete and cannot substitute for the comprehensive and verified disclosure reports required under FECA. And CLC remains unable to discern the identities of all the staff and contractors potentially paid through Parscale Strategy, or the true amounts, dates, and purposes of each payment funneled through Parscale Strategy.

### The Trump Committees and AMMC Respond to the Administrative Complaint

53.     AMMC, its parent corporation, and the Committees filed responses to CLC's complaint with the Commission. The responses and attached affidavits did not dispute any factual assertions included in the complaint or supplement; for example, the responses "acknowledged that AMMC has been run by individuals known and trusted by the Campaign."[37] Instead, the respondents principally asserted that some past campaigns had similarly contracted with clearinghouse vendors, but did not cite any statutory or regulatory authority allowing, or Commission precedent approving, those arrangements. *E.g.*, Committees' Response at 2-4. The responses also argued that the Committees and AMMC had interacted pursuant to a non-exclusive contract, but did not explain how the Committees could negotiate an arm's-length contract with the Campaign staffers running AMMC or address the fact that AMMC appears to have worked essentially exclusively for the Committees. *See, e.g.*, *id.* at 5-7. And the responses, citing the administrative complaint itself, suggested that the Campaign staff paid through Parscale Strategy

---

[37]   Suppl. Response of Make America Great Again PAC, *et al.*, MUR 7784 (Mar. 12, 2021), https://www.fec.gov/files/legal/murs/7784/7784_27.pdf ("Committees' Suppl. Response"); *see also* Response of Donald J. Trump for President, Inc., *et al.* at 5-7, MUR 7784 (Oct. 19, 2020), https://www.fec.gov/files/legal/murs/7784/7784_14.pdf ("Committees' Response"); Response of American Made Media Holding Corporation, Inc., and American Made Media Consultants, LLC, MUR 7784 (Nov. 16, 2020), https://www.fec.gov/files/legal/murs/7784/7784_15.pdf.

were W-2 employees of Parscale Strategy, but did not dispute that those staffers also worked for the Trump Campaign. *See id.* at 7.

### *OGC Recommends Finding Reason to Believe that the Committees Violated FECA*[38]

54.     Based on Plaintiff's administrative complaint and its supplement and the respondents' written responses, OGC recommended that the Commission find reason to believe that (1) the Trump Campaign "violated 52 U.S.C. § 30104(b)(5)(A) and 11 C.F.R. § 104.3(b) by misreporting the payees of payments made to [AMMC] and Parscale Strategy," (2) TMAGA "violated 52 U.S.C. § 30104(b)(5)(A) and 11 C.F.R. § 104.3(b) by misreporting the payees of payments made to [AMMC]," and (3) the Trump Campaign "violated 52 U.S.C. § 30104(b)(5)(A) and 11 C.F.R. § 104.3(b) by misreporting the purpose of payments made to Parscale Strategy." OGC Report at 26.

55.     In its report accompanying this recommendation, OGC first explained that Commission precedent indicated that the Committees "improperly failed to itemize[] AMMC's payments to subvendors in connection with their disclosures of more than three quarters of a billion dollars ($781,584,527.57) in disbursements to AMMC." OGC Report at 15; *see id.* at 11-21. After rigorously comparing the Committees' use of AMMC to the facts of past Commission proceedings, OGC determined that the Committees' lack of an arm's-length relationship with AMMC and use of the firm as a conduit for subvendor payments required the Committees to report

---

[38]  On March 29, 2022, after the FEC failed to act on CLC's administrative complaint for over twenty months (and its supplement for over fourteen months), CLC filed suit in this district to challenge the Commission's inaction as unlawful under the Act. *See* Compl., *Campaign Legal Ctr. v. FEC*, No. 1:22-cv-00838 (D.D.C. Mar. 29, 2022); *see also* 52 U.S.C. § 30109(a)(8)(A) (authorizing suit by administrative complainant to challenge FEC delay). Only after CLC took the agency to court did the Commission finally act on the administrative complaint. *See* Certification at 1-3, MUR 7784 (dated May 11, 2022). CLC voluntarily dismissed the delay suit on May 19, 2022, after receiving notice that the Commission had dismissed its administrative complaint. *See* Min. Order, *Campaign Legal Ctr. v. FEC*, No. 1:22-cv-00838 (D.D.C. May 19, 2022).

the ultimate payees of disbursements made through AMMC. *See id.* at 16-17, 20-21. In particular, OGC emphasized that AMMC received significant portions of the overall disbursements made by the Committees, that it was created and run by Trump Campaign staff, that it appeared to have been "created to serve the needs of the Trump [Campaign]," that its only clients appeared to be the Committees and the RNC, and that several of the supposed subvendors paid through AMMC appeared in fact to have been hired or controlled directly by the Trump Campaign and its staff. *See id.* at 15-17.

56.     In reaching its recommendation, OGC considered and rejected the Committees' arguments that they were not required to report their ultimate payees because their use of AMMC assertedly followed practices employed by past campaigns and because AMMC was a distinct legal entity. *See* OGC Report at 17-19. Instead, OGC concluded, relevant agency precedents made clear that, even if AMMC was technically a distinct legal entity from the Committees, its close ties to the Committees and the evidence that the Committees had used it as a conduit would still require the Committees to disclose the ultimate recipients of their disbursements through AMMC. *See id.* at 17-18.

57.     Next, OGC discussed its recommendation that the Commission find reason to believe that the Trump Campaign misreported the payees of disbursements to Parscale Strategy, explaining that "the Commission has previously concluded that a committee should disclose salary payments to specific, individually identified employees" and that, in any event, a committee must report payments to subvendors when the initial recipient of the funds is "merely a conduit for the intended recipient." OGC Report at 19 (citing Factual and Legal Analysis at 4-6, MUR 6818 (Allen Weh for Senate) (June 15, 2017); Factual and Legal Analysis at 9-10, MUR 6724 (Bachmann for President) (July 13, 2017)). OGC observed that the record indicated that "Parscale Strategy was

used [as] a pass-through to conceal" salary payments to Campaign staff, including Guilfoyle and Lara Trump, and accordingly, "that salary payments made by Parscale Strategy on behalf of the Trump [Campaign] to Trump [Campaign] staff should have been reported as salary payments to the ultimate individual payees rather than consulting service payments to Parscale Strategy." *Id.* at 20.

58.     Finally, OGC explained that the record established reason to believe that the Trump Campaign failed to accurately disclose the purposes of disbursements to Parscale Strategy. *See* OGC Report at 21-25. OGC reiterated that "[t]he available information support[ed] an inference that Guilfoyle's (and others') Trump [Campaign] salary was paid by Parscale Strategy, which is not apparent" from the purposes given for disbursements from the Campaign to Parscale Strategy from 2019 to 2020. *Id.* at 22-23. OGC concluded that these facts were analogous to those presented by a matter recently investigated and settled by the Commission in which "two committees, the Democratic National Committee and Hillary for America, made payments to a law firm for the reported purpose of 'legal services' [when the disbursements] in fact appeared to have been pass-through payments for opposition research conducted by a subvendor." *Id.* at 24. In the same way, the Trump Campaign "incorrectly" described salary payments to Campaign staff paid through Parscale Strategy as "'strategy consulting[,]' . . . 'video production services,' 'photography services,' and 'consulting—management/strategy/communications/political/digital.'" *Id.* (quoting FEC records). OGC therefore recommended finding reason to believe that the Trump Campaign misreported the purposes of salary payments made through Parscale Strategy.

### *The Commission Deadlocks 3-3 on a Reason to Believe Finding and Dismisses the Complaint*

59.     On May 10, 2022, by a deadlocked vote of 3-3, the Commission failed to approve OGC's recommendations, falling short of the four affirmative votes required to find reason to

believe that the Committees had violated 52 U.S.C. § 30104(b)(5)(A) and 11 C.F.R. § 104.3(b). *See* Certification at 1-2, MUR 7784 (dated May 11, 2022).

60.     Also on May 10, the Commission failed by 3-3 votes to dismiss the allegations as an exercise of prosecutorial discretion under *Heckler v. Chaney*, *see* Certification at 2, or to find reason to believe that the Trump Campaign and its treasurer had "violated 52 U.S.C. § 30104(b)(5)(A) and 11 C.F.R. § 104.3(b) by misreporting the purpose of payments made to Parscale Strategy," *id.* at 3.

61.     Finally, again on May 10, the Commission voted by a 4-2 margin to "[c]lose the file," thereby dismissing the matter. Certification at 3.

62.     By letter dated May 16, 2022, the Commission notified Plaintiff that it had closed the file and dismissed Plaintiff's complaint. Notification to Campaign Legal Center at 1, MUR 7784 (May 16, 2022), https://www.fec.gov/files/legal/murs/7784/7784_34.pdf.

63.     On June 9, 2022, the three Commissioners who voted against finding reason to believe and authorizing an investigation into Plaintiff's allegations issued a Statement of Reasons explaining the basis for their votes. *See* Statement of Reasons of Chairman Allen J. Dickerson and Comm'rs Sean J. Cooksey and James E. "Trey" Trainor, III, MUR 7784 (June 9, 2022), https://www.fec.gov/files/legal/murs/7784/7784_42.pdf ("Dickerson, Cooksey & Trainor Statement"). The no-voting Commissioners' Statement of Reasons demonstrates that their votes rested on interpretations of FECA and agency precedent that are legally unsustainable, arbitrary and capricious, and otherwise contrary to law.

64.     For example, the no-voting Commissioners applied an unjustifiably stringent legal standard that flouts the Act and relevant agency precedent, and clearly "unduly compromises the Act's purposes." *Orloski*, 795 F.2d at 164. The Commissioners first rejected OGC's conclusion

that the Committees were required to disclose the ultimate payees of disbursements made through AMMC and Parscale Strategy. *See* Dickerson, Cooksey & Trainor Statement at 4-9. Rather than employing the careful analysis dictated by Commission precedent, the Commissioners stated in conclusory fashion that reporting of ultimate payees is required only "when the facts indicate that the immediate recipient is merely a conduit for the intended recipient of the funds"—which, the Commissioners argued, is the case only "when the committee has previously instructed the payee to pass payments along to a third party that was not involved in the provision of services by the payee." *Id.* at 5 (emphasis and citation omitted). They further opined that subvendor reporting is not required in this context absent a showing that the reported vendor was deliberately used as a conduit "only out of a desire to conceal payments" to the ultimate subvendor, "in an attempt to disguise the intended recipient of funds." *Id.* at 6-7.

65.    The Commissioners also grounded their votes on an "agency acquiescence" rationale that lacks any legal or factual basis. They posited that use of a single clearinghouse vendor like AMMC—which here enabled the Trump Campaign to conceal the true receipients of nearly three-quarters of its 2019-20 reported spending, *see* OGC Report at 15 n.66 (noting that Trump Campaign's $516,697,606.57 million in reported disbursements to AMMC amounted to 69% of its $752,889,328.62 in total expenditures)—was "unremarkable" and consistent with the "historical practice" of past campaigns, a conclusion they notably rested on respondents' citations to "credible reports" in the news media detailing allegedly similar arrangements from prior election cycles, Dickerson, Cooksey & Trainor Statement at 7-8, 12. Although they did not suggest that the practice has been the subject of a matter under review by the FEC in the past, they argued that the agency had silently "acquiesce[d]" in the practice. *Id.* at 12-13.

21

66.    The Commissioners further contrived to demand a standard of proof under which they could arbitrarily disregard large swaths of the factual record. They offered two principal reasons for finding the allegations in the complaint legally insufficient to support a preliminary reason-to-believe finding. First—despite the fact that the administrative respondents had not disputed the accuracy of any of the factual allegations raised by Plaintiff's administrative complaint—the Commissioners opined that published news reports drawing on anonymous sources "are not a proper basis for Commission enforcement action." Dickerson, Cooksey & Trainor Statement at 8-9. Second, the Commissioners argued that "the bulk of the [cited] articles' factual allegations . . . would not persuade us to pursue enforcement here, even if they were true," as "ties" or even common staff between a vendor and a committee would not, in the Commissioners' view, suffice to show that the vendor was "merely a conduit" for disbursements to subvendors. *Id.* at 9. This portion of the Statement did not address significant facts alleged in the administrative complaint—for example, the evidence that Campaign staff created AMMC to benefit the Campaign, that the firm existed solely to benefit the Committees, or that the Committees directly worked with and supervised subvendors and staff paid through AMMC and Parscale Strategy.

67.    The Commissioners next rejected OGC's conclusion that the Trump Campaign failed to adequately describe the purpose of payments made through Parscale Strategy. Dickerson, Cooksey & Trainor Statement at 10-12. The Commissioners first noted that "strategy consulting" and other purpose descriptors used by the Trump Campaign to describe its disbursements to Parscale Strategy were, in the abstract, sufficiently specific to satisfy the Campaign's reporting obligations, provided that they accurately described the payments' purposes. *See id.* at 10-11. Critically, the Commissioners then refused to credit the uncontroverted news reports cited in

Plaintiff's administrative complaint documenting that disbursements to Parscale Strategy were in fact used to pay Campaign staff salaries, rather than for the purposes given by the Trump Campaign; the Commissioners observed that some of those reports were consistent with those Campaign staffers' being paid for their work for Parscale Strategy, rather than directly for the Campaign, and that the remainder drew on anonymous sources, which the Commissioners again suggested are a categorically illegitimate basis for a Commission investigation. *See id.* at 11-12. The Commissioners' reasoning left unexplained several anomalies raised by CLC's administrative filings—for instance, how the Trump Campaign could have compensated Parscale for his service as Campaign manager without reporting any salary payments to him.

68.     Following this extended factual and legal analysis of the complaint's merits, the Commissioners purported to explain their votes against finding reason to believe as an exercise of prosecutorial discretion. In support of this asserted rationale, the Commissioners first reiterated their view of the complaint's merits, then summarily argued that pursuing the matter would create "litigation risk" and consume agency resources. *Id.* at 12. The Commissioners also suggested that "the regulatory environment is uncertain," again referencing past campaigns' use of supposedly similar vendor arrangements and citing a pending FEC rulemaking petition filed by CLC that seeks to expand current subvendor reporting requirements so they apply *beyond* the vendor relationships alleged here. *See id.*[39]

---

[39]  *See also* CLC, *Petition for Rulemaking to Revise and Amend Regulations Relating to Subvendor Reporting Transparency* 3-4 (June 29, 2021), https://campaignlegal.org/sites/default/files/2021-06/6-29-21%20CLC-CSTP%20subvendor%20petition.pdf (noting that subvendor reporting is required under current law "when the vendor receiving the itemized disbursement does not have an 'arm's-length' relationship with the committee; when the payments to the ultimate payee were unrelated to the services provided pursuant to the itemized vendor's contract with the committee; and/or when the itemized vendor was merely acting as a 'conduit'").

69.     Two of the three Commissioners who voted to approve OGC's recommendation that the FEC find reason to believe also issued a Statement of Reasons explaining their votes. *See* Statement of Reasons of Comm'rs Shana M. Broussard and Ellen L. Weintraub, MUR 7784 (June 15, 2022),  https://www.fec.gov/files/legal/murs/7784/7784_43.pdf ("Broussard & Weintraub Statement"). The Commissioners found that the "meticulously documented" administrative complaint alleged the concealment of "exactly the type of information the FECA is intended to expose to the sunlight of disclosure," *id.* at 4, and "agreed" with OGC that the complaint provided reason to believe that the Committees violated the Act, *id.* at 3. They rejected the no-voting Commissioners' "attempt to discredit news reports as appropriate sources of information for complaints," observing that the complaint drew on "detailed reporting" from an array of reputable news organizations, such as the *Wall Street Journal* and the *New York Times*. *Id.*

70.     Commissioners Broussard and Weintraub further noted in their Statement that the dismissal of Plaintiffs' administrative complaint continued former President Trump's "remarkable win streak before th[e] Commission," during which "the FEC has received more than 40 complaints involving Donald Trump or his committee" but conducted "a grand total of zero" investigations, despite OGC's recommending a reason to believe finding in "at least 24" of those matters—and despite the Commission's recently pursuing enforcement against the Democratic National Committee for subvendor reporting violations analogous to those alleged here. Broussard & Weintraub Statement at 1, 5. The Commissioners concluded that the complaint's dismissal violated principles of fairness and consistent treatment under the law, and would "damag[e] . . . the integrity of America's campaign-finance process." *Id.* at 5.

## CAUSE OF ACTION

### *Count I: FECA, 52 U.S.C. § 30109(a)(8)(A)*

71.     Plaintiff repeats and realleges paragraphs 1-70 as if set forth fully herein.

72.     CLC's administrative complaint in MUR 7784 established reason to believe that (1) the Trump Campaign violated 52 U.S.C. § 30104(b)(5)(A) and 11 C.F.R. § 104.3(b) by failing to disclose the ultimate payees of disbursements made through AMMC and Parscale Strategy, (2) TMAGA violated 52 U.S.C. § 30104(b)(5)(A) and 11 C.F.R. § 104.3(b) by failing to disclose the ultimate payees of disbursements made through AMMC, and (3) the Trump Campaign violated 52 U.S.C. § 30104(b)(5)(A) and 11 C.F.R. § 104.3(b) by failing to adequately and accurately describe the purposes of disbursements made to Parscale Strategy.

73.     The Commission's failure to find reason to believe that these violations occurred and its subsequent dismissal of Plaintiff's administrative complaint were arbitrary, capricious, and contrary to law. *See* 52 U.S.C. § 30109(a)(8)(A); *Orloski*, 795 F.2d at 161.

## REQUESTED RELIEF

WHEREFORE, Plaintiff requests that this Court:

(1)     Declare that the FEC's dismissal of Plaintiff's administrative complaint was arbitrary, capricious, and contrary to law under 52 U.S.C. § 30109(a)(8)(A);

(2)     Order the FEC to conform with this declaration within thirty days pursuant to 52 U.S.C. § 30109(a)(8)(C);

(3)     Award Plaintiff its costs and reasonable attorney's fees incurred in this action; and

(4)     Grant such other relief as the Court may deem just and proper.

Dated: July 8, 2022                          Respectfully submitted,

                                             */s/ Megan P. McAllen*
                                             Megan P. McAllen (DC Bar No. 1020509)
                                             Richard Samuel Horan* (*pro hac vice*
                                             motion forthcoming)
                                             CAMPAIGN LEGAL CENTER
                                             1101 14TH ST. NW, SUITE 400
                                             WASHINGTON, D.C. 20005
                                             (202) 736-2200

                                             * *Licensed to practice in Massachusetts
                                             only; District of Columbia Bar application
                                             pending. Supervised by Megan McAllen, a
                                             member of the D.C. Bar.*